UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LOURDES CINTRON,                                                          :

                    Plaintiff,          :

             -against-                      : **REPORT AND RECOMMENDATION**

COMMISSIONER OF SOCIAL SECURITY           :          09 Civ. 09039 (GBD)(KNF)
 ADMINISTRATION,
                                     :

               Defendant.
------------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE GEORGE B. DANIELS, UNITED STATES DISTRICT JUDGE

## BACKGROUND

      Plaintiff Lourdes Cintron ("Cintron") commenced this action, alleging the Commissioner

of the Social Security Administration ("Commissioner") violated her Fifth Amendment due

process rights and seeking: (1) injunctive relief to stop the Commissioner "from issuing a

decision to withhold plaintiff's benefits in their entirety to recover the overpayment," pending

this action; and (2) to compel the Commissioner to provide her a hearing.  The Commissioner

made a motion to dismiss, pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  Cintron opposed the motion.

***Complaint***

      Cintron alleges that, in early June 2004, she was informed by the Social Security

Administration ("SSA") that she was due for a continuing disability review ("CDR") and that the

SSA's system showed she had work activity.  She completed the CDR examination forms but

never received any determination in connection with it.  Cintron contends that, shortly

afterwards, she received documents from the defendant, listing her past work activity.  Cintron

contacted the defendant and made an appointment for July 20, 2004, to review the information

the defendant possessed in connection with her past work activity.  According to Cintron, on the

day of the appointment, she was not informed by the defendant that the appointment would be

used as an "interview to assess her disability based solely on Substantial Gainful Activity

("SGA")."  Cintron maintains that "[t]here were errors and conflicts in the information [the

defendant] had about [her] work activity.  Dates did not match to actual events.  For example,

they had [her] working for Con Edison from '1/1/99 to 12/31/99' when she had work [sic] there

for about six months."  Cintron contends that she "left the office with the understanding that

defendants had given her time to gather the correct information.  They did not state a deadline

nor informed her about the need to file forms requesting neither corrections on work or earning

reports (Form SSA-7008) nor that [they were] investigating the possibility of an overpayment."

Cintron alleges she "received a Notice of Proposed Decision dated August 10, 2004 . . . while

she was in the process of contacting her previous employers."  The August 10, 2004 notice

informed Cintron as follows:

> We have information about your work and earnings that could affect your Social
> Security disability payments.  Based on this information, it appears we will decide
> that your disability ended because of substantial work and that you are not entitled
> to payments for: November 2000 through December 2002.  We are writing this letter
> to give you a chance to give us more information that you want us to consider.
> Please review the following information we are using to make our decision.  You
> have 10 days to [give ] us more information before we make our decision final.  The
> 10 days start the day after you receive this letter.  We assume that you got this letter
> 5 days after the date on it unless you show us that you [did] not get it within the 5-
> day period.  If you need more time, let us [know] right away. . . . If we do not hear
> from you within the next 10 days, we will make our decision based on the
> information we have now. . . . When we make our decision, we will send you another
> letter.

Cintron maintains that the August 10, 2004 "notice did not provide information about the period of time [she] was deemed not disabled nor when benefit payments would stop," and the "whole notice was confusing and distressful in that it gave no options for [her] to prevent a sudden and unexpected total loss of her only source of income." According to Cintron, the "dates of work activity in the notice were conflicting. For example, they had [her] working in two different jobs at the same time. [Cintron] never worked two jobs at a time."

Cintron received the defendant's letter, dated August 24, 2004, informing her, in pertinent part:

> Earlier we wrote to tell you that we had information about your work and earnings that could affect your Social Security disability payments. We also told you that we planned to decided that your disability ended because of substantial work. We are now writing to tell you our decision. We have decided that your disability has ended and that you are not entitled to payments for: November 2000 through December 2002.
> INFORMATION ABOUT YOUR PAYMENTS
> Your payments continued during your period of 9 trial work months while you tested your ability to work. Your trial work period ended July 2000.
> WHAT HAPPENS AFTER THE TRIAL WORK PERIOD
> After the trial work period, several things happen. Your disability ends if your work activity shows your ability to do substantial work. However, we pay benefits for the month disability ends and the following 2 months no matter how much is earned. Based on the information we have, in your case, this is August 2000 through October 2000. You get an extended period of eligibility that begins right after the trial work period. This is a 36 months period when we restart payments for any month(s) your work is not substantial if your health problems still meet our rules. Based on the information we have, your extended period of eligibility began August 2000 and will end if substantial work is performed after 36 months following this date. Based on the information we have, we have determined that we cannot pay benefits for: November 2000 through December 2002. . . . You will be notified later about any overpayment or underpayment due in this case. . . . If you think we are wrong, you have the right to appeal. . . . You have 60 days to ask for an appeal.

According to Cintron, the August 24, 2004 decision was issued "before the expiration of the time granted to answer the Notice of Proposed Decision," dated August 10, 2004, and the August 24, 2004 letter "was a disability cessation decision, not an overpayment decision." Cintron contends

that the August 24, 2004 "notice also failed to provide the date in which [her] disability ended, and implied she was not disabled at the time the decision was issued, August 24, 2004.  The results of the CDR or how it affected their decision was never revealed to her."  Cintron alleges that "[f]rom the date of that determination, defendants have acted as if they had issued an overpayment decision on that date, August 24, 2004."

Cintron contends that, on September 3, 2004, she visited the defendant's office "to discuss the disability cessation notice and the Notice of Proposed Decision," but the defendant "refused to grant [her] time to provide more evidence for their claims of SGA and was adamant in not letting [her] appeal the disability cessation decision stating 'it is evident that you did SGA.'"  On September 3, 2004, Cintron filed a Request for Reconsideration of the disability decision and a Statement of Claimant or Other Person, in which she claimed her due process rights were denied because the decision was based on incorrect information, which she offered to correct.  In that statement, Cintron requested "an extension of [the] proposed decision" time, explaining that she wanted to speak to an attorney and that the employment information used by the defendant to make the August 24, 2004 determination was wrong.

According to Cintron, on February 16, 2005, she "received a letter from Division of Disability Determinations ordering another CDR, seven months after the first one.  Defendant has never sent [her] a determination about either of the two CDRs."  On November 5, 2005, Cintron received a Notice of Change in Benefits, which "was actually a determination of overpayment.  The incorrect amounts defendant claimed were paid each month to [her] were not included; an explanation of the availability of a different rate of withholding when full withholding is proposed was not mentioned."  The November 5, 2005 notice stated, in pertinent part: (a) Cintron was paid "$26,340.20 too much in benefits for the period of September 2000

4

through December 2002"; (b) she had to "refund the overpayment within 30 days"; (c) if Cintron

did not pay the full refund within 30 days, the defendant would "recover the overpayment by

withholding [her] full benefit each month beginning with the payment [she] would normally

receive about February 8, 2006" until the payment is recovered fully; and (d) Cintron had a right

to appeal "this overpayment determination."  On December 12, 2005, the defendant sent a letter

to Cintron, stating: "We received your request that we not collect the overpayment.  You will

receive benefits . . . until we respond to your request."  Cintron alleges that the defendant "had

actually taken the Request for Reconsideration of the disability cessation decision filed by [her

on] September 3, 2004 . . . for a request for waiver for the overpayment.  This left [her] without

relief for the Disability Cessation decision and caused confusion about what was the issue."

Cintron maintains that she "had not filed up to that time, any request for waivers."  She contends

that, on December 22, 2005, she visited the defendant's office in order to file a request for

reconsideration of the overpayment determination and a request for a waiver, but the defendant

"refused to let [her] file request for reconsideration of the overpayment because, according to

him, it was filed on September 3, 2004," and he "allowed [her] to file only the request for

waiver."

      Cintron received a letter, dated January 10, 2006, stating:

> We have received all of the waiver information you have submitted.  However, the
> copy of the reconsideration dated 09/03/04 states that the disability cessation was
> processed with erroneous information.   Therefore, reconsideration on the
> overpayment should be filed instead of a waiver.  Please fill out the reconsideration
> and along with it submit the additional information you have regarding your
> disability cessation.

On February 1, 2006, Cintron visited the defendant's office "to request both a reconsideration

for overpayment . . . and a waiver," but the defendant refused to see her.  Although Cintron

informed the defendant, at that time, that she had no telephone service and asked for an appointment letter to be sent to her, she never received an appointment.

Cintron alleges that the defendant "did not have contact with [her] until July 2008," when she visited the defendant's office "to request assignment of her Supported Housing Program representative payee," which was made on July 17, 2008.  According to Cintron, a "Notice of Change in benefits dated November 30, 2008 . . . was sent to [her] payee," but she received no copy of it.  The November 30, 2008 letter stated, in pertinent part, that: (i) Cintron was paid "$24,595.20 too much in benefits"; (ii) her "request for a recon has been denied"; and (iii) she had a right to appeal.  On December 17, 2008, Cintron requested an appointment with the defendant, which was scheduled for December 22, 2008.  On that day, the defendant refused to talk with Cintron because she appeared without her payee.  Cintron contends that the defendant "agreed to take an 'informal waiver'" request where it was mentioned that "the waiver had to be filed with the payee present."  On December 30, 2008, Cintron visited the defendant's office "with her case manager" and filed: (1) a Request for Hearing by Administrative Law Judge, "for which she never received an answer"; (2) a "Request for Waiver of Overpayment Recovery Or Rate in Repayment Rate"; and (3) a "Request to Be Selected As Payee."

Cintron alleges that, on June 2, 2009, she received a telephone call from the defendant's representative "ordering [her] to go the next day to sign a payment agreement because '[the defendant's representative had] to finish this tomorrow.' [Cintron] asked her about the waivers, the requests for reconsideration and hearing," and was told they were "denied."  On June 4, 2009, Cintron visited the defendant's office where she received an "Overpayment Information," dated June 4, 2009, which informed her "of the denial of waiver," without stating any reason for the denial.  It also informed her that she:

6

[had] a right to meet with us before we decide if you have to pay back the overpayment.  This meeting is called a personal conference.  A person who has not made any decision about your waiver request will meet with you. I am writing to schedule this meeting.  You also have a right to review your file before the personal conference.  I am scheduling a time for this meeting as well.

On June 8, 2009, Cintron appeared for the personal conference, but the defendant could not locate her file and "the worker who was supposed to meet with [her] was 'unavailable.'" According to Cintron, she met with the same person "who made the disability cessation and the overpayment determination, and who adamantly denied [her] the right to file a request for reconsideration for the overpayment in November 2005."  Cintron alleges that, at the personal conference, the defendant's representative "refused to listen to [her] about her previous requests for hearing and reconsideration and proceeded to calculate the overpayment," determining that "she should pay fifty dollars towards the overpayment," to be deducted starting with the next payment, even if she appealed.  Cintron informed the defendant that "she would still request review of the decisions, because, among other things, she did not know how much she owed if there was an overpayment, if she was still deemed not disabled" and she asked if the amount to be deducted could be reduced to twenty-five dollars, but the "defendant refused that offer."

Cintron received an "Overpayment Information," dated June 11, 2009, stating: "We are writing about your request that we waive the collection of your Social Security overpayment. Based on the facts we have, we cannot waive the collection of your overpayment of $24595.20 [sic]," because Cintron could not show that: (i) it was not her fault that she received "too much Social Security money"; and (ii) paying back would mean Cintron could not pay her bills for food, clothing, housing, medical care, or other necessary expenses, or it would be unfair for some other reason.  The June 11, 2009 letter also informed Cintron about her right to appeal. Cintron alleges that, on June 17, 2009, she requested a hearing with an administrative law judge

7

and was told that her previous request for a hearing, filed on December 30, 2008, "was invalid because the worker who filed it did it incorrectly."  The defendant's representative told Cintron that she would look for her file and notify her if it was located, and she "gave her a hand-written letter stating that it should be considered a timely filed request for hearing."  Cintron alleges that her personal conference was never rescheduled.  She maintains that a few days later, the defendant's representative informed her that her file was located and that she would notify her "when it arrived from Massachusetts. [Cintron] has never heard from her again.  Defendant has since constantly avoided [her] and has not answered any of [her] messages [left] for [the defendant's representative]."  Cintron received an "Important Information," dated August 3, 2009, "informing there was a 'new payment schedule'.  All of her checks will be withheld in their entirety for the next three years to recover the overpayment.  No information about any appeals rights or any payment plan that would allowed [sic] [Cintron] not to become homeless the next week, [or] any mention [of] the payment plan Defendant . . . . previously devised."  Cintron was informed by an "Important Information," dated August 18, 2009: "We received your request that we withhold a different amount, You will receive benefits . . . until we respond to your request."

Cintron seeks: (1) injunctive relief "to stop the Commissioner . . . from issuing a decision to withhold plaintiff's benefits in their entirety to recover the overpayment" pending this action; and (2) "a Hearing with an Administrative Law Judge."  Cintron alleges that the defendant's decision to withhold her benefits in their entirety will put her life in danger because she "has no other source of income and depends exclusively on her benefits."

***Motion to Dismiss***

The Commissioner argues that "the action should be dismissed for lack of subject matter

jurisdiction because plaintiff did not exhaust administrative remedies." He contends that "[j[udicial review of social security claims arising under title II of the Act is provided for, and limited by, sections 205(g) and (h) of the Social Security Act," and "[i]t is clear from these statutory provisions that the only civil action permitted on any claim arising under title XVI[1] of the Act is an action to review 'the final decision of the Commissioner made after a hearing.'"

According to the Commissioner:

> Plaintiff has not received a final decision of the cessation, made after a hearing, on the issue of 1) the cessation of benefits due to work activity from August 2000 through December 2002; 2) the resulting overpayment of benefits; or 3) the schedule of repayment of benefits. With regard to the overpayment and repayment schedule, plaintiff was sent notices on June 9 and June 11, 2009, advising her of the overpayment and indicating, respectively, that she had 60 days to file a request for reconsideration or a request for a hearing on this issue. . . . She was also sent a notice of a revised repayment schedule on October 24, 2009, indicating that she could request reconsideration within 60 days. . . . Plaintiff did not file such a request. Likewise, plaintiff has not obtained a final decision on the issue of the cessation of benefits due to work activity from August 2000 through December 2002. Plaintiff filed a request for a hearing on December 30, 2008. . . .The request is currently pending and "will be assigned to an administrative law judge (ALJ) promptly." . . . Thus, plaintiff has not yet had a hearing or obtained a final decision on the cessation issue.

According to the Commissioner, although "courts may excuse a claimant from exhausting administrative remedies . . . such as where the plaintiff raises a challenge wholly collateral to his claim for benefits and makes a colorable showing that his injury could not be remedied by the retroactive payment of benefits . . . this is not a 'special case' in which the failure to exhaust may be excused.

The Commissioner also contends no basis exists for Cintron's assertion of the Fifth

---

[1] It is not clear why the defendant refers, in his memorandum of law, to a "claim arising under title XVI of the Act." The pleadings and the defendant's evidence on the motion to dismiss indicate that Cintron's disability arises solely under Title II, not Title XVI, Supplemental Security Income, of the Social Security Act.

Amendment due process rights violation and she "has not identified any respect in which her due process rights were violated in the course of the administrative process, nor could she," because she "received all the process available under the Act and the SSA regulations."  Moreover, injunctive relief is "unnecessary" and Cintron cannot show irreparable harm.  The Commissioner contends, Cintron "seeks injunctive relief to stop the Commissioner from issuing a decision to withhold her entire benefit check, an occurrence that is merely speculative.  Moreover, even if it were to occur, it could be remedied by money damages."  The Commissioner maintains that he "did not issue a decision to withhold benefits in their entirety," because the "Agency notified [Cintron] on August 13, 2009, that her benefits would continue to be paid in full while her request was considered. . . .  Finally, on October 24, 2009 - four days prior to filing this civil action - plaintiff was notified that her monthly benefit checks would continue, reduced by $50.00 to recover the overpayment, and that she had 60 days to request reconsideration of this decision."

In support of his motion, the Commissioner submitted an affidavit, dated April 21, 2010, by "Patrick J. Herbst ("Herbst"), Chief of Court Case Preparation and Review Branch 4 of the Office of Appellate Operations, Office of Disability Adjudication and Review, Social Security Administration," to which fifteen exhibits are attached.  In his affidavit, Herbst stated that he is "responsible for the processing of claims under Title II of the Social Security Act, as amended, whenever a civil action has been filed in the State of New York," and that Cintron's "official file maintained by the Office of Disability Adjudication and Review" is in his custody.  Herbst stated:

> On April 13, 2010, the undersigned forwarded plaintiff's official claims file to the Bronx office of the Office of Disability Adjudication and Review (ODAR) for the processing of plaintiff's request for a hearing before an administrative law judge. . . . On this date, the undersigned discussed the urgency of this case with the Director of the Bronx ODAR office.  The Director stated that plaintiff's file had been

reviewed by an employee of that Office and that plaintiff's request for hearing will
be assigned to an administrative law judge (ALJ) promptly.

Cintron opposes the motion, contending that "[a]ll 'pending' hearings mentioned in
defendant's motion to dismiss come only as a result of this action."  Cintron contends that the
defendant "did not allow [her] to correct her earnings records before making the cessation (and
consequently the overpayment decision) basing it on incorrect facts."  She claims: (a) her waiver
request was denied without any explanation, as required by the Social Security Act regulations;
(b) her personal conference was improper, because it was conducted by the person who
previously made decisions in her case; and (c) the defendant lost her file and told her that she
would be contacted once the file is located, so she can have a "proper personal conference and
file review," but this has not occurred.

Cintron maintains that "[t]he 'pending' decisions are not what [she] has discussed here"
and she received no due process because the defendant "has already made his final decision just
as he made his decision to impose the overpayment on her: without giving her an opportunity to
be heard."  She argues the motion to dismiss should be denied because: (i) she was denied access
to the administrative law judge and the defendant committed "many administrative violations";
(ii) "[e]vidence presented by defendant in this motion to dismiss indicates the high possibility
that her case file has been manipulated and its integrity compromised"; (iii) defendant violated
her due process rights by forcing her to cancel her payee arrangement in order to exercise her
administrative due process rights, causing an interruption in her mental health treatment; and
(iv) her benefits are a property interest, which the defendant is taking from her without providing
an opportunity to be heard.  Cintron claims that the defendant's argument, that she received all
the process available, is contradicted by the evidence, showing that she could not have had all

11

the process available "if she was not allowed to timely request reconsideration for an

overpayment" and "she was not allowed to inspect her file to see on what evidence he was

making his decision nor have a proper personal conference before the defendant started to

appropriate money from her checks, in violation of § 404.506(c)."  Moreover, Cintron contends,

if, as it appears from the defendant's position in his motion to dismiss, that the plaintiff

"received all the process available," that would be the "equivalent to having taken a final

decision on the issue."  Cintron contends the defendant violated her due process rights, pursuant

to 20 C.F.R.: (1) § 404.821, by not allowing her to correct her earning records; (2) § 404.502a,

by not allowing her to file her request for reconsideration of the overpayment decision because

"she had already filed it in 2004"; (3)  § 404.502a, by not acting on her waiver request; (4) §

404.922, by not explaining what "recon has been denied" or why; (5) §§ 404.506 and

404.506(c), by never meeting with her prior to denying her waiver without explaining why it was

denied; and (6) § 404.506(f), by having the person who made decisions in her case previously

conduct the personal conference.

 Cintron contends that the "file" prepared by Herbst is incomplete, which is evident from

the defendant's Exhibit 6, "'Explanation of Determination [3/9/05]' where it says, 'The past

medical folder for the CPD could not be located.  Attempts to reconstruct this case by contacting

the claimant or representative to obtain medical information that were used at CPD were

unsuccessful.'"  Cintron contends that the defendant is attempting to reconstruct her file by using

copies of the documents she submitted to the defendant, such as the defendant's Exhibits 2, 5, 8,

and 11.  Cintron objects to the introduction of: (a) a letter in the defendant's Exhibit 7, dated

December 13, 2005; and (b) a letter in the defendant's Exhibit 13, dated June 2, 2009, because

she never received them.  Additionally, she contends, she is in possession of two copies of a

letter, dated June 4, 2009, which is contained in the defendant's Exhibit 13, in different typeset

and with different content.  One of those two letters was given to her when she visited the

defendant's office and contains less due process information than the other one, which she

received in the mail.  Cintron argues that the defendant's claims are uncorroborated, such as the

statement that "[o]n August 20, 2004, the agency determined that this work constituted SGA

from August 2000 through December 2002," because "Defendant has no evidence for this claim

unless he fabricates one."  Similarly, the defendant's statement that "[o]n January 10, 2006, the

agency sent an acknowledgment indicating that her request for reconsideration had been

received," is a misrepresentation because that is not what the letter states.  Cintron argues that a

document in the defendant's Exhibit 10, entitled "Reconsideration-Suspension of Benefits,"

dated September 2, 2008, was sent to an address at which she never lived and she never received

it.  The defendant's claim that Cintron "was subsequently notified on March 18, 2005, that her

disability continued," is erroneous because she never received such notification.  Moreover,

Cintron contends:

> The address in the letter is incomplete, contains no apartment number.  This letter
> was fabricated for this motion.  Plaintiff had a conversation with [the defendant's
> representative] on 6/8/09 where he told her, after she asked him about the results of
> this CDR, (he looked in his computer) that the results were sent to an address in
> Queens.  She told him that that was not her address.

Cintron argues that the defendant's representation that "[t]he [November 30, 2008] letter

indicated that reconsideration of the cessation had been denied" is erroneous because the letter

involved a new overpayment determination, not a notification of the reconsideration decision.

According to Cintron, the defendant's statement, that "Plaintiff was first notified on November

5, 2005, that she had been overpaid $26,340.20 in benefits for the period November 2000

13

through December 2002," is a misrepresentation because that letter states that the period is September 2000 through December 2002, and she was first informed about the overpayment when she visited the defendant's office, on September 3, 2004.  Additionally, the defendant's statement that she was first notified in November 5, 2005, that she had been overpaid contradicts Herbst's statement that "[o]n September 3, 2004, Plaintiff . . . also filed a Waiver of Overpayment Recovery," when "the waiver to which Mr. Herbst refers in 'Exhibit 5' is dated 12/22/05," confirming Cintron's "claim that the defendant was . . . charging her an overpayment not yet decided."  Similarly, the defendant's contention that "Plaintiff had previously requested waiver of the overpayment on September 3, 2004 and February 1, 2006" is a misrepresentation because she "was trying to appeal a cessation decision, not an overpayment" and "there was no February 1, 2006 waiver request.  The first waiver she was allowed to request was in 12/22/05, which is the one defendant has in the 'evidence' submitted for this motion."  Cintron contends that Herbst's statements that, "[o]n August 20, 2004, a Determination was performed that Plaintiff was no longer disabled due to her work activity . . . On August 23, 2004, Plaintiff requested an extension of time to seek Counsel and protested the employment information the Social Security Administration relied upon to perform the determination," are erroneous because "there was no disability cessation determination on August 20, 2004.  Plaintiff could not have requested an extension for a *cessation* decision not yet made.  Defendant has no evidence unless he fabricates one."  Cintron argues that the defendant's statement that she "filed the instant civil action four days after her last notice was issued, on October 28, 2009," is erroneous, because she filed this action on September 24, 2009.  According to Cintron, "[a]ll these denials of waivers, reconsiderations and the recoupment of the 'overpayment' were done without plaintiff having a *single* opportunity to fight their decisions nor to see her file nor to have a proper personal

14

conference nor to request a hearing with an ALJ." Additionally, in her opposition to the motion, Cintron seeks a declaratory judgment that "defendant's requirement that a beneficiary surrender a needed service, representative payee, in order to assert her administrative due process rights is a violation of the Constitutional 5th Amendment, and of Section 504 of the Rehabilitation Act because it discriminates against people with mental disabilities."[2]

### Administrative Proceedings Update

On April 13, 2010, Herbst sent a memorandum to the Hearing Office Director, Office of Disability Adjudication and Review, Bronx, New York, with a subject line: "Carmen[3] Cintron Pino, Claimant and Wage Earner," stating, among other things:

> On September 2, 2008, a reconsidered determination was made that found that disability insurance benefits were not payable to the claimant beginning with the month of November 2000.  On December 30, 2008, the claimant completed a form which requested a hearing before an administrative law judge.  No action, however, has been taken to date with respect to such request for hearing, in part because both the request and the claimant's file were present[4] in the social security office for processing overpayment-related issues.  It is unclear from the content of the request for hearing which issue that the claimant was contesting, although it appears from pleadings that she has filed in the U.S. District Court for the Southern District of New York that such requests pertains to the issues addressed in the reconsideration determination of September 2, 2008.  Inasmuch as no action has been taken by the hearing office with respect to the request for hearing that was filed in this case, I am forwarding the file in this case to your office for such administrative action(s) as may be necessary.  As there has been delay in the processing of such request, it is my opinion that expedited handling of this request for hearing is indicated.

---

[2] "A claim for relief 'may not be amended by the briefs in opposition to a motion to dismiss.'" Telectronics Proprietary, Ltd. v. Medtronic, Inc., 687 F. Supp. 832, 836 (S.D.N.Y. 1988) (citation omitted).  Accordingly, Cintron's request for a declaratory judgment, made in her opposition to the defendant's motion to dismiss, cannot be considered.

[3] Cintron points out the wrong first name on the subject line; her first name is not Carmen but Lourdes.

[4] Cintron questions whether the author intended to write "were not present," rather than "were present."  Logic and context appear to suggest that to be the case.

On May 19, 2011, the Court directed the parties to inform it: (a) whether any hearing has been held since the filing of the defendant's motion; (b) the basis for the hearing; (c) the result of the hearing; and (d) any other facts pertinent to the status of the plaintiff's request for an administrative hearing.  According to the information received, on May 4, 2010, Cintron received a notice of hearing by an ALJ, informing her that the issues considered would be whether: (i) "there has been any medical improvement relating to your ability to work since we last found you disabled'" and (ii) "one of the exceptions to medical improvement stated in the Act and our regulations applies."  On May 5, 2010, Cintron wrote to the ALJ, stating, inter alia: "I did not ask for a hearing to discuss whether [I] am not disabled *now.*  The only issue that I would consider discussing is the determination of disability cessation made in 8/24/04."  Cintron asked the ALJ to consent to her request to discuss only "the disability cessation made in 8/24/04 and anything related to that decision including due process notification."  She also asked that, if the ALJ consents to her request, she "would like to know if I have at least an hour to review [my case] file."  Cintron received no response.

The administrative hearing was conducted on June 3, 2010.  Cintron received a "Notice of Decision — Fully Favorable," dated June 24, 2010, which stated that the issue considered at the hearing was "whether the claimant can be relieved of repaying the Social Security Disability benefits overpayment of $26,340.20 that she received for months after August 2000 in which she performed substantial gainful work activity."  The ALJ found that: (1) Cintron was overpaid $26,340.20 in benefits, "due to proper cessation of disability effective August 2000 and the application of trial work period and extended period of eligibility provision of the law"; (2) Cintron "was without fault in causing the overpayment"; (3) "[r]ecoupment of the overpayment would defeat the purpose of the Title II program"; and (4) Cintron's "overpayment is waved."

On July 10, 2010, Cintron appealed the June 24, 2010 decision, accepting that part of the decision "favorable to [her] by waiving the overpayment," and objecting to the ALJ's determination that "the original cessation determination 'of September 2, 2008' was correct and 'the resulting overpayment of $26,340.20' was also correct."  Cintron stated that the ALJ "did not order the administration to return $400 they had taken up to date from my benefits."  She also pointed out certain inaccuracies in the ALJ's recitation of the facts, such as the ALJ's statement: "The undersigned takes notice that while the claimant's case was pending review, she filed an action against the Commissioner of Social Security . . . ."  Cintron contended that, contrary to the ALJ's factual findings, "there was no September 2, 2008 notice and the overpayment amount was reviewed and determined (incorrectly) in November 2008 to be in the amount of $24,595.02, not '$26,340.32."  Cintron contends that the "issue of whether there was a 'pending review' was never discussed in the hearing.  There was no 'pending review' hearing *before* I filed the complaint in the District Court; this issue is part of my complaint in that court case."  Cintron contended that, because the ALJ limited the issue of the hearing to the waiver of the overpayment, she "was not allowed to present in the hearing any of the issues I have raised in the suit against the Commissioner, including this 'pending' review issue."  Cintron stated that: (a)"the overpayment amount is incorrect"; (b) "the cessation decision was not correct"; (c) "the 'effective' date is incorrect, and the application of trial work period [was] incorrect."

On April 25, 2011, Cintron received a letter from the Office of Disability Adjudication and Review, informing her:

> This is about the Administrative Law Judge's decision dated June 24, 2010.  The notice attached to the decision was incorrect in telling you that you had 30 days to file exceptions to the decision or if you did file exceptions you would have the right to file a civil action beginning on the 61st day following the date of the Administrative Law Judge's decision.  The correct notice would have informed you

of your right to file an appeal with the Appeals Council if you disagreed with the decision. Since you did file exceptions in this case on July 20, 2010, it is clear that you wish to appeal the decision and we will consider your letter as a request for review of the hearing decision and process it accordingly.

Cintron also informed the Court that, as of May 2011, Comunilife was replaced by Postgraduate Center as her Supported Housing Program service provider.

## DISCUSSION

### *Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction*

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" Triestman v. Federal Bureau of Prisons, 470 F.3d 471 474 (2d Cir. 2006) (citation omitted).  A court must have jurisdiction before it can consider the merits of a claim.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.").  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

> In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both. . . . If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.

Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001) (quotation marks and citations omitted).  "However, once a factual attack is made on the federal court's subject matter jurisdiction, the district judge is not obliged to accept the plaintiff's allegations as true and may examine the evidence to the contrary and reach his or her own conclusion on the matter." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350

(3d ed. 2004); see Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235, 1244 (2006)

("[I]f subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to

review the evidence and resolve the dispute on her own.").  "In resolving a motion to dismiss for

lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence

outside the pleadings."  Makarova, 201 F.3d at 113.

       The defendant appears to make a legal, not factual jurisdictional challenge, since he

argues that "the complaint seeking judicial review should be dismissed . . . [b]ecause plaintiff . . .

has not obtained a judicially reviewable 'final decision,'" and, consequently, the district court

lacks subject matter jurisdiction pursuant to the Social Security Act, 42 U.S.C. § 405(g).  No

dispute exists concerning whether a final determination was issued in connection with any issue

contained in Cintron's complaint.  The defendant's jurisdictional argument is based on an

erroneous assumption that "Plaintiff brought this action for judicial review of determination that

plaintiff's work activity from August 2000 through December 2002 lead to cessation of

disability and resulted in an overpayment of benefits."  Cintron does not allege that a final

decision was issued in her case and she does not challenge any final decision; rather, she alleges

that her due process rights were violated because, inter alia, she did not have an opportunity to

present evidence and correct erroneous information based on which an initial determination that

her disability ceased was made, which resulted, further, in an overpayment determination.

Under the heading "CLAIMS" in her complaint, Cintron asserts that the defendant: (a) "violated

administrative due process when he did not allow plaintiff to timely file request for

reconsideration on the initial overpayment determination"; (b) "refused to allow plaintiff to file

a Request for Reconsideration for the overpayment decision dated November 5, 2005";

(c) "incorrectly treated the initial disability cessation determination of August 24, 2004 as an

overpayment determination"; (d) "revised [his decision] and . . . refused to allow plaintiff to timely file a request for consideration"; (e) prevented her "from filing request for reconsideration [of the November 30, 2008 revised decision, indicating changes to the amount of the overpayment owed] after the revision and even before the revision"; (f) "refused to send plaintiff notice of revised overpayment determination because she ha[d] representative payee"; (g) "refused to allow plaintiff to timely file a request for reconsideration of the revised determination because her payee was not present"; and (h) "had a duty to recuse himself from the [personal conference] because of his knowledge of the case" but failed to do so.  As it is apparent from the part of the complaint styled "CLAIMS," Cintron asserts that the defendant had statutory duties, in connection with the plaintiff's due process rights, which he failed to discharge.

When Cintron filed her complaint, she used a form styled "COMPLAINT," distributed by this court's Pro Se Office, in which she marked "Federal Questions" as the basis for jurisdiction and explained that at issue was the "Due Process Clause of the Fifth Amendment of the Constitution of the U.S.A."  However, in the section of the complaint styled "PRAYER FOR RELIEF," Cintron requested an order: (1) granting her injunctive relief, "to stop the Commissioner of the Social Security Administration from issuing a decision to withhold plaintiff's benefits in their entirety to recover the overpayment until this Honorable Court has the opportunity to hear this complaint"; and (2) directing "a Hearing with an Administrative Law Judge," because she "never had an opportunity to be heard."  It cannot be more clear from Cintron's assertion of a violation of the Due Process Clause of the Fifth Amendment and the relief she seeks that the subject matter jurisdiction asserted by her is not based on the Social Security Act, 42 U.S.C. § 405(g), but on the Mandamus and Venue Act, 28 U.S.C. § 1361.

20

Cintron does not seek a review of the final administrative decision; rather she seeks to compel an officer of the United States to perform his duty, pursuant to the Mandamus and Venue Act, 28 U.S.C. § 1361, as well as injunctive relief.

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The Supreme Court stated that it "ordinarily presume[s] that Congress intends the executive to obey its statutory commands, and, accordingly, that it expects the courts to grant relief when an executive agency violates such a command." Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 681, 106 S. Ct. 2133, 2141 (1986).

> [T]he [Supreme] Court has repeatedly avoided the question of §405(h)'s effect on § 1361 jurisdiction to review procedures of the Secretary, in the process obliterating the complexities of § 405(g) and transforming it into a more accessible grant of jurisdiction which does not necessarily require exhaustion of remedies, and which accommodates . . . injunctive relief.

Ellis v. Blum, 643 F.2d 68, 79-80 (2d Cir. 1981); see Your Home Visiting Nurse Servs., Inc. v. Shalala, 525 U.S. 449, 456 n.3, 119 S. Ct. 930, 935 n.3 (1999) (declining to decide whether "mandamus is altogether unavailable to review claims arising under the [Social Security] Act, in light of the second sentence of 42 U.S.C. § 405(h), which provides that '[n]o findings of fact or decision of the [Commissioner] shall be reviewed by any person, tribunal, or government agency except as' [herein] provided."). "Mandamus jurisdiction does not lie where the claims are not against the [Commissioner] for failure to comply but rather are directed at the propriety of the regulations themselves." Smith v. Schweiker, 709 F.2d 777, 779 (2d Cir. 1983). Accordingly, in the Second Circuit, "§405(h) does not preclude assertion of §1361 jurisdiction over claims

essentially procedural in nature." Ellis, 643 F.2d at 82.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212, 103 S. Ct. 2961, 2965 (1983).  Although the Second Circuit never ruled on the issue of whether an application for a writ of mandamus, pursuant to 28 U.S.C. § 1361, is barred by the doctrine of sovereign immunity against suits, it has decided appeals from such actions without suggesting that the sovereign immunity bar applies in mandamus actions, pursuant to 28 U.S.C. § 1361.  See e.g., Ellis, 643 F.2d 68; Mercer v. Birchman, 700 F.2d 828, 829 (2d Cir. 1983); City of New York v. Heckler, 742 F.2d 729, 730 (2d Cir. 1984).  Before the common-law writ of mandamus was codified, the Supreme Court stated that "[i]t is settled that . . . a suit brought by the person entitled to the performance of the duty against the official charged with its performance is not a suit against the government." Houston v. Ormes, 252 U.S. 469, 472, 40 S. Ct. 369, 370 (1920); see Dugan v. Rank, 372 U.S. 609, 621-22, 83 S. Ct. 999, 1007 (1963) (noting exceptions to the doctrine of sovereign immunity: "(1) action by officers beyond their statutory powers and (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void."); accord Fornaro v. James, 416 F.3d 63, 69 (D.C. Cir. 2005) ("No separate waiver of sovereign immunity is required to . . . compel an official to perform a duty required in his official capacity."); McClain v. Panama Canal Comm'n, 834 F.2d 452, 454 (5th Cir. 1987) ("[T]he mandamus statute, 28 U.S.C. § 1361, . . . waives, for some purposes, the sovereign immunity of the United States."); Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1234 (10th Cir. 2005) ("[A]pplication of the mandamus remedy to require a public official to perform a duty imposed upon him in his official capacity is not limited by sovereign immunity."); but see  Muirhead v. Mecham, 427 F.3d 14, 18 (1st Cir.

2005) (in an action for declaratory judgment, the court stated that "the provisions of the mandamus statute do not waive the sovereign immunity of the United States."); In re Price S. Russell, 155 F.3d 1012, 1012 (8th Cir. 1998) (in an action seeking to compel the Board of Veterans Appeals and the U.S. Court of Veterans Appeals to rule on the plaintiff's claim, the court stated that "[i]t is well settled that the mandamus statute, 28 U.S.C. § 1361, does not provide a waiver of sovereign immunity."); Hou Hawaiians v. Cayetano, 183 F.3d 945, 947 (9th Cir. 1999) (in an action seeking to compel the United States to bring suit against the State of Hawaii for a breach of public trust, the court states that sovereign "immunity has not been waived by mandamus statute, 28 U.S.C. § 1361."). Thus, in this circuit, sovereign immunity does not bar an application for a writ of mandamus, pursuant to 28 U.S.C. § 1361.

Cintron does not challenge the validity of the defendant's procedures. She claims that the defendant was required, but failed, to provide her with process that was due to her pursuant to the Social Security Act. Cintron seeks to compel the Commissioner, an officer of the United States, see U.S. Const. Art. II, §2, cl.2, 42 U.S.C. § 902(a), to perform statutorily prescribed duties owed to her, including, inter alia: (a) permitting her to present evidence to correct erroneous information that formed the basis of the August 24, 2004 determination ending her disability; (b) providing proper notices to her, including due process notices; (c) providing her a hearing; and (d) issuing an initial determination on the matters that have not been determined. As no factual jurisdictional challenge is made here, taking Cintron's allegations as true, she invoked the court's subject matter jurisdiction, pursuant to the Mandamus and Venue Act, 28 U.S.C. § 1361, properly, and the Court will consider the merits of her application for mandamus relief. In doing so, the Court will limit itself to the pleadings and the updated information requested from the parties by the Court, on the administrative proceedings held

23

subsequent to the commencement of this action, as both parties agree about the administrative

procedural history within that time period.  Moreover, the consideration of that administrative

procedural history is necessary to determining whether granting the relief Cintron seeks would

be academic.

### *Whether Mandamus Is Warranted*

Mandamus is available only to compel officers or employees of the United States "to

perform some ministerial duty imposed upon them by law, and which they wrongfully neglect or

refuse to perform."  Minnesota v. Hitchcock, 185 U.S. 373, 386, 22 S. Ct. 650, 655 (1902).

"The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a

remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the

defendant owes him a clear nondiscretionary duty."  Heckler v. Ringer, 466 U.S. 602, 616,

104 S. Ct. 2013, 2022 (1984).  The determination to issue a writ of mandamus is within the

court's discretion.  See Kerr v. U.S. Dist. Ct. for N. Dist. of Cal., 426 U.S. 394, 403, 96 S. Ct.

2119, 2124 (1976).

#### *Whether Commissioner Owes a Clear Nondiscretionary Duty to Cintron*

Cintron seeks to compel the defendant to conduct a hearing respecting "the overpayment

and disability cessation decisions."  The rules governing a hearing before an administrative law

judge, promulgated pursuant to the Social Security Act, state that a hearing before an

administrative law judge may be requested if the agency made, inter alia: (1) a reconsidered

determination; (2) a revised reconsidered determination; and (3) an initial determination denying

waiver of recovery of an overpayment based on a personal conference.  See 20 C.F.R. §

404.930(a).  "We will hold a hearing only if you or another party to the hearing file a written

request for a hearing."  20 C.F.R. § 404.930(b).  As the regulation indicates, the defendant has a

nondiscretionary duty to hold a hearing, once it is requested in writing. Cintron had a right to request a hearing based on the November 30, 2008 notice, denying "a recon." On December 30, 2008, Cintron requested, in writing, a hearing before an administrative law judge, but did not receive a response. The defendant owed a nondiscretionary duty to Cintron to hold a hearing, but failed to do so. Additionally, the defendant owed other duties to Cintron, which he failed to discharge; some illustrative examples follow.

The August 10, 2004 notice of proposed decision informed Cintron: "You have 10 days to [give] us more information before we make our decision final. The 10 days start the day after you receive this letter. We assume that you got this letter 5 days after the date on it . . . ." Thus, according to the defendant, Cintron is assumed to have received the August 10, 2004 notice on August 15, 2004, and she had until August 25, 2004, to provide additional information to the defendant before the final decision would be made. Once the defendant gave Cintron a deadline by which to provide additional information, he had a duty to keep that deadline and could not, arbitrarily, issue his decision prior to the expiration of that deadline, without violating Cintron's right to due process. That is precisely what the defendant did here: he gave Cintron until August 25, 2004, to provide additional information, but he issued his decision, announcing the cessation of her disability, on August 24, 2004.

The defendant's August 24, 2004 letter, informing Cintron that her disability ended, violated the agency's regulation concerning notice of the initial determination, which provides that, "[i]f our determination involves a determination of disability that is in whole or in part unfavorable to you, our written notice also will contain in understandable language a statement of the case setting forth the evidence on which our information is based." 20 C.F.R. § 404.904. No language setting forth the evidence on which the defendant determined that Cintron's

disability had ceased was included in the notice, thus violating the statutory duty requiring the contrary.  Moreover, no date on which her disability ended was provided.

On September 3, 2004, Cintron filed a "Request for Reconsideration" of the "letter dated 8/24/04 notifying me of your decision that my disability has ended," in which she pointed out that the letter: (a) did "not identify as to which specific aspect of my disability it is addressing"; (b) was not clear about whether it was "a CDR decision"; (c) stated she "was overpaid but doesn't say how much or how can I repay"; (d) did not enclose the pamphlet it stated it enclosed, entitled "Your Right to Question the Decision Made on Your Social Security Claim"; and (e) was confusing.  In addition, Cintron noted that the determination is based on incorrect information.  Cintron never received any decision on her timely, written request for reconsideration of the August 24, 2004 disability cessation determination.  This violated the statutory duty that the defendant "shall reconsider an initial determination if you . . . file[] a written request." 20 C.F.R. § 404.909(a).

On November 5, 2005, the defendant informed Cintron that her benefits have changed because she was overpaid "$26,340.20 . . . for the period of September 2000 through December 2002."  This was the first overpayment notice Cintron received from the defendant.  Cintron attempted to file a request for reconsideration of the November 5, 2005 overpayment decision, but the defendant did not allow her to do so, claiming that it was already filed on September 3, 2004.  The defendant violated his statutory duty to allow Cintron to file a request for reconsideration of the November 5, 2005 overpayment determination, see 20 C.F.R. § 404.909(a), based on his erroneous belief that such a request had been filed already, on September 3, 2004.  Cintron's September 3, 2004 request for reconsideration of the August 24, 2004 disability cessation determination could not have been a request for reconsideration of the

November 5, 2005 overpayment determination, because it predates the overpayment

determination by more than one year.

On December 12, 2005, the defendant informed Cintron that he received her "request that

we not collect the overpayment" and would respond to it.  However, Cintron did not file an

overpayment waiver request prior to December 22, 2005.  The defendant misinterpreted

Cintron's September 3, 2004 request for reconsideration of the August 24, 2004 disability

cessation determination as an overpayment waiver request.  On December 22, 2005, Cintron

filed an overpayment waiver request.  On January 10, 2006, the defendant acknowledged that

Cintron's September 3, 2004 request for reconsideration stated that "disability was processed

with erroneous information" and that "reconsideration of the overpayment should be filed

instead of a waiver" and asked Cintron to "fill out the reconsideration and along with it submit

the additional information you have regarding your disability cessation."

The November 30, 2008 notice gave Cintron "new information about the disability

benefits," namely that she was overpaid "24,595.20" and that her "request for a recon has been

denied."  Since November 30, 2008 notice indicated an overpayment amount different from the

overpayment amount determined in the initial November 5, 2008 notice of the overpayment, it

constituted a revised determination of the overpayment, pursuant to 20 C.F.R. § 404.987.  At the

same time, the November 30, 2008 notice also constituted a denial of "a recon."  The defendant

owed statutory duties to Cintron, which include that: (a) "[w]hen a determination or decision is

revised, notice of the revision . . . will state the basis for the revised determination or decision

and the effect of the revision," 20 C.F.R. § 404.992(a); and (b) "a written notice of the

reconsidered determination . . . shall state the specific reasons for the determination," 20 C.F.R.

§ 404.922.  The November 30, 2008 notice revising the overpayment determination and denying

"a recon," provided no basis for the revised decision and no specific reasons for the denial of "a recon" nor did it identify "a recon" that was denied.  Moreover,  no discretion exists to truncate the words used in the agency's notices arbitrarily; rather the defendant has a duty, as indicated throughout the Social Security Act, to use clear language when communicating with beneficiaries.

The June 4, 2009 letter informed Cintron that her overpayment waiver request was not approved, and she appeared for a personal conference on June 8, 2009.  The defendant had a duty to tell Cintron, at the personal conference, that "the decisionmaker was not previously involved in the issue under review, that the waiver decision is solely the decisionmaker's, and that the waiver decision is based only on the evidence or information presented or reviewed at the conference."  20 C.F.R. § 404.506(f)(1).  The defendant failed to discharge that duty when: (a) the personal conference was conducted by the decisionmaker who "made the disability cessation and the overpayment determination, and who adamantly denied petitioner the right to file a request for reconsideration of the overpayment in November 2005"; and (b) Cintron's case file could not be located, and she had no opportunity to review the file, as required by regulation, see 20 C.F.R. §§ 404.506(c), 404.506(d).  On June 11, 2009, Cintron's request for a waiver was denied.

Cintron filed this action on September 24, 2009.  See Toliver v. County of  Sullivan, 841 F.2d 41, 42 (2d Cir. 1988) (a pro se plaintiff's complaint is considered filed when it is received by the Pro Se Office).  According to the parties' supplemental briefing, a notice of hearing, dated May 4, 2010, informed Cintron that the hearing was scheduled for June 3, 2010, to consider the issue of "[w]hether there has been any medical improvement relating to your ability to work since we last found you disabled; and whether one of the exceptions to medical

28

improvements stated in the Act and our regulations applies."  On May 5, 2010, Cintron objected

to the issues noted in the defendant's May 4, 2010 notice of hearing, requesting that "the

disability cessation made in 8/24/04 and anything related to that decision including due process

notifications" be reviewed at the hearing.  The defendant had a duty to "make a decision on [her]

objections either in writing or at the hearing." 20 C.F.R. §§ 404.939.  No decision about

Cintron's objections was made by the administrative law judge.

      On June 24, 2010, the administrative law judge issued a decision waiving Cintron's

overpayment.  The June 24, 2010 decision states that "[t]he issue in this case is whether the

claimant can be relieved of repaying the Social Security Disability benefits overpayment of

$26,340.20 that she received for months after August 2000 in which she performed substantial

gainful work activity."  The June 24, 2010 notice of decision, waiving the overpayment, is

styled as "Fully Favorable."  Although neither the written notice nor the administrative law

judge identified the August 24, 2004 disability cessation determination as an issue that would be

addressed at the June 3, 2010 hearing, the June 24, 2010 notice of decision contained an

unfavorable finding that the August 24, 2004 disability cessation determination was proper,

which Cintron appealed.  Thus, the June 24, 2010 decision: (i) mooted Cintron's request for

injunctive relief, which sought to preclude the defendant from issuing a decision to withhold her

benefits while this action is pending, because the overpayment was waived and she did not

appeal that part of the decision; and (ii) did not moot Cintron's request for mandamus relief,

because Cintron's December 30, 2008 request for a hearing in connection with the August 24,

2004 determination ending her disability was never answered.  The defendant owes a

nondiscretionary duty to Cintron to conduct the hearing upon her December 30, 2008 written

request, in connection with the August 24, 2004 determination ending her disability, because

Cintron's request for reconsideration of that decision was denied, after it was interpreted, erroneously, as a request for reconsideration of the overpayment determination.

### _Whether Cintron Exhausted All Other Avenues of Relief_

Cintron has exhausted all other avenues of relief because, since 2004, she has attempted numerous times, either in writing or in person, to explain that the defendant made errors, depriving her of due process, only to have the defendant reject her attempts and make more errors and cause confusion concerning her case. Cintron's allegations are detailed and the documentation she submitted in their support substantiates her claims. The manner in which the defendant handled Cintron's case at every step of the process, since 2004, including the loss or misplacement of her case file, does not comport with due process. Especially disturbing are representations made by the defendant, which are not in consonance with the obligations imposed on him by Rule 11(b) of the Federal Rules of Civil Procedure. Cintron has meticulously dissected each statement made by Herbst in his declaration as well as the defendant's memorandum of law, demonstrating many falsities and unsubstantiated assertions.

For example, Herbst stated that, "[o]n August 20, 2004, a Determination was performed that Plaintiff was no longer disabled due to her work activity." Cintron is correct that no evidence was presented to substantiate this assertion and, in light of the fact that Cintron's case file was missing, at least since March 2005 and Herbst's acknowledgment, on April 13, 2010, that "no action has been taken to date with respect to such request for hearing" because the claimant's file was not "present," the veracity of his statement of what occurred on August 20 2004 is suspect. The defendant's memorandum of law states: "Plaintiff was first notified on November 5, 2005, that she had been overpaid $26,340.20 in benefits for the period November 2000 through December 2002." In support of this statement, the defendant makes citation to

Herbst's declaration ¶ (3)(i) and Exhibit 7 to Herbst's declaration.  Herbst's declaration, ¶ (3)(i),

states: "On July 17, 2008 Notice was sent advising Plaintiff that Communilife Inc., was selected

to act as a representative payee (Exhibit 9)."  However, ¶ (3)(g) of his declaration states that

"[o]n November 5, 2005, Plaintiff was sent notice that she had been overpaid . . . (Exhibit 7)."

Exhibit 7 is the November 5, 2005 notice, informing Cintron about the overpayment, but "for the

period of September 2000 through December 2002," not "November 2000 through December

2002," as represented in the defendant's memorandum of law.

Similarly, the defendant's memorandum of law represents that Cintron "had previously

requested waiver of the overpayment on September 3, 2004 and February 1, 2006," making

citation to ¶¶ (3)(e) & (h) of Herbst's declaration.  Herbst's declaration states: "3 (e) . . . On

September 3, 2004, Plaintiff filed a Request for Reconsideration and also filed a Waiver of

Overpayment Recovery (Exhibit 5). . . . (h) On February 1, 2006, Plaintiff responded requesting

that she wanted both a waiver and reconsideration to be considered at the same time (Exhibit 8)."

Exhibit 5 demonstrates that Cintron filed a request for waiver on December 22, 2005 and Exhibit

8 shows that, on February 1, 2006, Cintron handwrote on a copy of the January 10, 2006 letter

sent to her by the defendant: "Mrs. Rivera: I was here today.  I will come back next week.  I have

no phone service for you to contact me.  You could send me a letter with an appointment date.  I

want both, the waiver and the reconsideration form to be considered at the same time."

Cintron's handwritten note not only did not constitute the filing of a waiver request, but she

specifically stated that she wanted the waiver request, filed on December 22, 2005, and her

request for reconsideration to be considered simultaneously.  If it is, as the defendant represents

in his memorandum of law, that Cintron "was first notified on November 5, 2005, that she had

been overpaid," she could not have "previously requested waiver of the overpayment on

31

September 3, 2004." Therefore, the defendant's representation, that Cintron "had previously requested waiver of the overpayment on September 3, 2004 and February 1, 2006," is false. The defendant's contention that "[b]oth requests appear to have been premature" is frivolous, given that the defendant acknowledges that the "2004 request was made prior to a finding that an overpayment had occurred."

Furthermore, Herbst stated that, "[o]n August 23, 2004, Plaintiff requested an extension of time to seek Counsel and protested the employment information the Social Security Administration relied upon to perform the determination. . . . (Exhibit 5)." Cintron is correct that "there was no disability cessation determination on August 20, 2004 [and she] could not have requested an extension for a cessation decision not yet made" and no evidence was presented that a determination on cessation of disability was made prior to August 24, 2004. In light of this case's disturbing administrative procedural history, the Court finds that Cintron exhausted all other avenues of relief and a writ of mandamus is warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that : (a) the defendant's motion to dismiss, Docket Entry No. 9, be denied; and (b) a writ of mandamus issue, directing the defendant to conduct a hearing to address the issue of the disability cessation determination, made on August 24, 2004, as well as other pertinent issues resulting from it.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

George B. Daniels, 500 Pearl Street, Room 630, New York, New York, 10007, and to the

chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007.  Any

requests for an extension of time for filing objections must be directed to Judge Daniels.

FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A

WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  See Thomas v.

Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York                       Respectfully submitted,
       July 1, 2011

                                                KEVIN NATHANIEL FOX
                                                UNITED STATES MAGISTRATE JUDGE

Mailed copies to:

Lourdes Cintron
Susan Colleen Branagan, Esq.